UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER MONTANEZ,
                              Plaintiff,

                 -v-

THERESA TYNON, *Superintendent*,
                              Defendant.

18-CV-1766 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

*Pro se* petitioner Christopher Montanez has filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  On April 5, 2013, Montanez was convicted in the Supreme Court

of New York, New York County, on one count of assault in the third degree, New York Penal

Law § 120.00, and one count of gang assault in the second degree, New York Penal Law

§ 120.06.  (Dkt. No. 2 ("Petition") at 1.)  He is currently serving a sentence of eight years'

imprisonment and five years' supervised release.  (*Id.*)  For the reasons that follow, the petition is

denied.

I.       **Background**

         A.       **Underlying Facts**

         In the early morning of May 8, 2010, Montanez was out at a bar with some friends.  (Dkt.

No. 13-9 ("Tr.") at 521–22.)  As they left the bar around 4:00 a.m., one member of Montanez's

group, Andrew McCray, got into an altercation with a man outside, Kayim Washington.  (Tr. at

537–38.)  McCray's friends—including Montanez, Shadia Brackman, and Martrell Terrell—also

became involved in a physical altercation with Washington, along with two other unidentified

individuals.  (Tr. at 539; Petition at 27–29.)  The events were captured on video by a bystander.

(*See* State Trial Exh. 17 ("Video").)  As the fight ensued, Montanez attempted to kick, punch, or

stomp Washington multiple times.  (Petition at 28; Video at 1:03–1:05, 1:44–1:47.)  Terrell hit

Washington several times with a traffic cone and an unidentified man in a red shirt hit Washington with a wooden plank.  (Petition at 29; Video at 1:44–1:46, 1:55–2:11.)  Police Officer Christopher Delsordo arrived to break up the fight, and Montanez, Brackman, Terrell, and McCray were arrested for their involvement.  (Dkt. No. 13-8 ("Tr.") at 160, 165–66.)  Washington suffered a temporal bone fracture and permanent hearing loss as a result of injuries sustained during the fight.  (Tr. at 414–15, 421–22.)

> **B.** **Trial and Conviction**

Montanez, Brackman, Terrell, and McCray were each indicted on one count of assault in the first degree and one count of gang assault in the first degree.  (Petition at 30.)  They were tried together in New York County Supreme Court.

As an element of the offenses, the prosecution needed to demonstrate that the defendants caused "serious physical injury."  N.Y. Penal Law §§ 120.10, 120.07.  The State intended to prove this element with reference to the injuries sustained by Washington, but the prosecution was unable to secure Washington as a witness for trial.  (Tr. at 587.)  Instead, the prosecution planned to rely on Washington's medical records from after the fight to demonstrate that he sustained a serious injury.  (Petition at 30–31, 40.)  One set of Washington's post-fight medical records was produced in discovery.  (Petition at 40.)  But defense counsel were not informed of the existence of a second set of medical records until after jury selection had begun.  (Dkt. No. 13-7 at 57–58; Dkt. No. 12 ("Resp. Br.") at 36.)  Montanez's attorney sought to postpone opening statements until after the records could be reviewed; the judge denied the request, reasoning that nothing in the second set of records was a surprise to the defendants.  (Dkt. No. 13-7 at 278–80.)  After the second set of medical records was turned over, defense counsel collectively moved for a mistrial based on the late disclosure, which was denied.  (Tr. at 243.)  The records were subsequently introduced into evidence at trial, with no objections.  (Tr. at 412.)

During summation, counsel for McCray made several statements to which Montanez's trial counsel objected, and which the trial court characterized as "not the wisest choice of words." (Dkt. No. 13-10 ("Tr.") at 825–26, 845–46, 48). Those statements include:

- Referring to the fight as a "vicious" attack on Washington. (Tr. at 790, 841.)
- "[A]ll black men are not criminals. As a matter of fact, 90 percent are hard working, decent, honest people." (Tr. at 822.)
- "[E]very defendant has a reason to lie." (Tr. at 823.)
- Remarking after an objection by Petitioner's counsel: "if I was allowed to finish my remarks…." (Tr. at 835.)
- Warning the jury that they cannot "play 'Inspector Clousteau [*sic*].'" (Tr. at 836.)
- Telling the jury "if you think [the police] did a good investigation, I submit to you, ladies and gentlemen, you don't know anything about detective work." (Tr. at 842.)
- "You can believe in aliens. Unless the prosecutor comes in to prove there's aliens by a piece of metal from another planet. Just because you see a fuzzy picture of a saucer in the sky, that's ambiguous, it doesn't prove there's aliens." (Tr. at 836.)

Montanez's counsel moved for a mistrial on the basis of these remarks, which he considered to be "totally improper"; the request was denied. (Tr. at 845–46, 849.) Instead, the trial court issued curative instructions to the jury, clarifying that it is not true that all defendants lie (Tr. at 834), and repeatedly instructing them to evaluate the evidence against each defendant individually (Tr. at 833-34, 1014; Dkt. No. 13-11 ("Tr.") at 1326, 1331).

At the close of trial, defense counsel collectively asked the trial court to issue a "missing witness" charge to the jury regarding the absence of the complaining witness, Kayim Washington. (Dkt. No. 13-6 at 400; *see* Tr. at 685.) The court determined that the State's unsuccessful efforts to locate the witness were sufficiently diligent, and therefore declined to issue the charge. (Tr. at 686–88, 701–03.) But the court told defense counsel that they were "absolutely free to argue" at summation about "why Mr. Washington isn't here." (Tr. at 701.) And indeed, during his summation Montanez's counsel drew inferences from Washington's absence from trial. (*See, e.g.*, Tr. at 932–34, 943–48.)

After the trial court charged the jury and deliberations had begun, the video of the fight was released to the public, and a newspaper article on the case was published.  (Tr. at 1201–02, 1207–08.)  Montanez's counsel requested a mistrial on the basis that the publicity from the article would deny the Petitioner's right to a fair trial.  (Tr. at 1214–16.)  The trial court questioned the jurors individually to see whether they had been exposed to anything in the news that would affect their ability to be impartial.  (Tr. at 1221–23.)  Satisfied with the jurors' responses, the court denied the motion for a mistrial, and instructed the jury to avoid any coverage of the case.  (Tr. at 1245, 1262–63.)  More reporting on the case was released that evening, and after questioning the jury as a group the following day, the court was again satisfied that the jury remained impartial and the case could continue.   (Tr. at 1307–1310, 1332–33.)

During deliberations, the jury sent out a note requesting that the court explain "[t]he definition and explanation of intent as put forward in gang assault in the first degree.  In particular, whether intent from Person A of a group can be derived from the intent of other members in the group."  (Tr. at 1121–22.)  The court proposed to respond to this question by issuing a supplemental instruction that "reread the expanded definition of intent" used in charging the jury, and added language pulled from a couple of precedents.  (Tr. at 1264–65.)  Counsel for Montanez objected to the proposed instruction on the basis that it could confuse the jury as to the difference between intent and accessorial liability.  (Tr. at 1271–72, 1299.)  The court overruled the parties' objections and used the instruction as originally proposed, stating: "if a defendant knowingly continues to participate after the intentions of his or her companions become clear, then you are entitled to draw the inference that that defendant shared those intentions."  (Tr. at 1326.)

Ultimately, the jury returned a verdict convicting Montanez of the lesser-included offenses of third degree assault and second degree gang assault. (Tr. at 1361.) He was sentenced to eight years' imprisonment and five years' supervised release on the gang assault count, and one year of imprisonment on the assault charge, to be served concurrently. (Dkt. No. 13-11 at 301–02.) The other three defendants were convicted of gang assault in the first or second degree, and assault in the first or second degree. (Tr. 1364, 1356, 1359.)

## C.      Direct Appeal

Montanez, Terrell, and McCray jointly appealed to the First Department of the Supreme Court Appellate Division, which affirmed the convictions in all respects. *See People v. Montanez*, 47 N.Y.S.3d 6, 147 A.D.3d 444 (App. Div. 1st Dep't 2017).

On direct appeal, Montanez raised five grounds for relief. First, he contended that his trial counsel was constitutionally ineffective for failing to object to the admissibility of Washington's medical records, or to the testimony of the officer who identified Washington at the scene of the fight. (Dkt. No. 13-2 at 24–26.) The Appellate Division concluded that the claim could not be evaluated on direct appeal, and in the alternative that Montanez had received effective assistance under state and federal standards.   147 A.D.3d at 446.

Second, Montanez argued that the trial court's supplemental instruction on intent was improper because it did not communicate that the inference of intent was permissive. (Dkt. No. 13-2 at 27.) The Appellate Division declined to review the claim because it had not been preserved at trial.  147 A.D.3d at 446.

Third, Montanez asserted that the evidence was legally insufficient to sustain his conviction for gang assault in the second degree, and that the verdict was repugnant and unsupported by the weight of the evidence. (Dkt. No. 13-2 at 30–34.) The Appellate Division largely disagreed, concluding that the conviction was "based on legally sufficient evidence and

not against the weight of the evidence." 147 A.D.3d at 444. But the court declined to review the repugnancy claim because it had not been preserved at trial. *Id*. at 446.

Fourth, Montanez argued that the trial court erred in denying his three motions for a mistrial based upon (i) the late disclosure of medical records, (ii) the allegedly inflammatory remarks in another counsel's summation, and (iii) the publicity surrounding the case. (Dkt. No. 13-2 at 35–41.) The Appellate Division rejected this argument on the merits, explaining why the decision not to declare a mistrial was appropriate in each instance. 147 A.D.3d at 445.

Fifth and finally, Montanez contended that the trial court had erred in denying a missing witness instruction. (Dkt. No. 13-2 at 42–46.) The Appellate Division upheld the decision because the prosecution had demonstrated a "genuine inability to locate [the] witness." 147 A.D.3d at 445–46 (quoting *People v. Savinon*, 100 N.Y.2d 192, 198 (2003)).

On February 27, 2018, Montanez filed this petition for habeas relief under 28 U.S.C. § 2254. (Dkt. No. 2.) Proceeding *pro se*, Montanez raises as grounds for habeas relief the same five issues that he pursued on direct appeal, having attached the appellate briefing to his Petition in lieu of separate submissions. (Petition at 18, 65.)

## II.     Legal Standard

### A.     Habeas Corpus

For a federal district court to grant a writ of habeas corpus, the petition must satisfy a "difficult to meet ... and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations and quotations omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a federal district court may grant "a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court . . . with respect to any claim that was adjudicated on

the merits in State court" if (1) the adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court"; or (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Furthermore, under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Under most circumstances, "a federal habeas court may not reach the merits if the state court's rejection of a federal claim 'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"  *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  "This rule applies whether the state law ground is substantive or procedural."  *Coleman*, 501 U.S. at 729.

### B.	Exhaustion and Procedural Default

A federal court may not consider a habeas corpus petition unless the petitioner has exhausted all state judicial remedies.  *See* 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  A state remedy has been exhausted when a petitioner has presented the federal constitutional claim asserted in the petition to the highest state court and thus adequately informed the court of both the legal and factual bases for the federal claim.  *Picard*, 404 U.S. at 275–77; *see also Lurie v. Wittner*, 228 F.3d 113, 123–24 (2d Cir. 2000).

"[W]hen a Petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review."  *Cone v. Bell*, 556 U.S. 449, 465 (2009).  However, "[a] 'state law ground is only adequate to support the judgment and

foreclose review of a federal claim if it is firmly established and regularly followed in the state,'
and application of the rule would not be 'exorbitant.'" *Bierenbaum v. Graham*, 607 F.3d 36, 47
(2d Cir. 2010) (internal quotation marks omitted) (quoting *Garvey v. Duncan*, 485 F.3d 709,
713–14 (2d Cir. 2007)).

A state court's finding of state procedural default "will bar federal habeas review of the
federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice
attributable thereto,' or demonstrate that failure to consider the federal claim will result in a
'fundamental miscarriage of justice.'" *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations
omitted). A finding of ineffective assistance of counsel may constitute "cause" excusing
procedural default. *Tavarez v. Larkin*, 814 F.3d 644, 650 (2d Cir. 2016).

## III. Discussion

Montanez seeks habeas relief on five bases: (1) ineffective assistance of counsel; (2)
alleged deficiencies in a jury instruction; (3) the correctness of the verdict in relation to the
evidence presented; (4) the denial of three motions for a mistrial; and (5) the failure to issue a
missing witness charge. (Petition at 5, 7–8, 10–11.) The Court addresses each in turn.

### A. Ineffective Assistance of Counsel

Montanez contends that his trial counsel was constitutionally ineffective for: (1) failing to
raise a specific objection to the admission of Washington's medical records; (2) failing to seek
certain redactions from Washington's medical records; and (3) failing to object to Officer
Delsordo's testimony identifying Washington. (Petition at 39–43.) Respondent counters that the
ineffectiveness claim is unexhausted, but regardless should be dismissed as meritless. (Resp. Br.
at 14–21.) The Court agrees.

## 1.    Exhaustion

In order to exhaust claims for habeas review, a petitioner must "have employed the proper state-law procedural vehicle so that the state courts are afforded an opportunity to review his claims." *Perez v. Conway*, No. 09 Civ. 5173, 2011 WL 1044607, at *3 (S.D.N.Y. Mar. 18, 2011). To raise a claim of ineffective assistance in New York, the proper procedure is to bring a post-judgment motion to vacate under section 440.10 of the New York Criminal Procedure Law, which enables the court to develop an evidentiary record. *Id*. As the Appellate Division explained, Petitioner has failed to properly exhaust his ineffectiveness claim by failing to file a section 440.10 motion. 147 A.D.3d at 446. But the claim is not procedurally defaulted because it could still be pursued in state court. *See Alke v. Artus*, No. 12 Civ. 5977, 2013 WL 4700828, at *2 (E.D.N.Y. Sept. 1, 2013).

For petitions that involve both exhausted and unexhausted claims, courts have several options:

> (1) dismiss the entire petition for failure to comply with the exhaustion requirement, 28 U.S.C. § 2254(b)(1)(A); (2) stay the petition and permit the petitioner to exhaust the unexhausted claims in state court, but only where the petitioner has shown good cause for not previously exhausting, and the unexhausted claims are not plainly meritless; (3) permit the petitioner to delete the unexhausted claims, if neither a stay nor a dismissal of the petition for failure to exhaust is appropriate, or (4) deny the unexhausted claims on the merits, 28 U.S.C. § 2254(b).

*Sweeper v. Graham*, No. 14 Civ. 6346, 2017 WL 4516645, at *3 (S.D.N.Y. Sept. 26, 2017) (citations omitted). Because Montanez's ineffective assistance claim fails on the merits, the Court elects to deny the claim notwithstanding the lack of exhaustion.

## 2.    Legal Standard

In order to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner "must (1) demonstrate that his counsel's

performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." *Cornell v. Kirkpatrick*, 665 F.3d 369, 375 (2d Cir. 2011) (quoting *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008)). Under the performance prong, courts "strongly presume[ ]" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen*, 563 U.S.at 189 (quoting *Strickland*, 466 U.S. at 690). As to the prejudice prong, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In this Circuit, the prejudice prong of a claim of ineffective assistance can turn on the cumulative effect of all instances of ineffective assistance together. *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001).

On federal habeas review of a state ineffective assistance claim, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). This analysis requires "doubly deferential judicial review." *Id.*

### 3.    Merits

Here, the Appellate Division declined to review Montanez's ineffective assistance claim on direct appeal, but held in the alternative that Montanez's counsel was adequate under *Strickland*. 147 A.D.3d at 446. Such alternative holdings on the merits of an ineffectiveness claim are afforded AEDPA deference. *See Gordon v. Lavalley*, No. 13 Civ. 4401, 2014 WL 888468, at *14–16 (S.D.N.Y. Mar. 6, 2014), *report and recommendation adopted*, 2016 WL 5793400 (S.D.N.Y. Oct. 3, 2016). Applying this doubly deferential review, the Court cannot say

that the Appellate Division's rejection of Petitioner's ineffective assistance claim involved an unreasonable application of clearly established law.

### a.     Admission of Medical Records

The first alleged deficiency identified by Montanez is his trial counsel's failure to object to the admission of Washington's medical records, on the basis that the records were not properly certified under state law.  (Petition at 41–42.)  Respondent seems to concede that the records were not properly certified.  But she nonetheless contends that the failure to object on this ground did not prejudice Montanez, because the prosecution could have easily corrected the deficient certifications and offered the records into evidence.  (Resp. Br. at 18–19.)  The Court agrees.  Because Montanez cannot demonstrate "a reasonable probability that, but for" the failure to object to the improper certifications, "the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, to the extent his ineffective assistance claim rests on the certification argument, it must be denied.

### b.     Redaction of Medical Records

Second, Montanez asserts that his counsel was deficient for failing to object to the admission of certain information provided by Washington that was recorded on the medical forms, because according to Montanez that information was inadmissible and violated the Confrontation Clause.  (Petition at 42–43.)

Counsel's failure to object to the admission of evidence "does not amount to deficient performance" where "there were sound evidentiary bases for the admission of the challenged" evidence.  *United States v. Diaz*, 176 F.3d 52, 113 (2d Cir. 1999).  Respondent asserts that the unredacted information on the medical forms that was provided by Washington was admissible because it qualified for a hearsay exception.  (Resp. Br. at 19–20.)  The Court agrees.

Under New York law, hospital records fall under the business records exception to hearsay, and a victim's statement to hospital personnel that are contained in such records are admissible if the statements are relevant to diagnosis or treatment. *People v. Ortega*, 15 N.Y.3d 610, 617 (2010). Accordingly, the trial court directed the prosecution to redact from the records all statements from Washington that were not "necessary to be said to the Doctors for him to get medical treatment," and the court engaged thoroughly with defendants' requests for redactions. (Dkt. No. 13-7 at 270; *see* Tr. at 237–38, 314–19, 401–03.) The Court concludes that the unredacted information provided by Washington in the medical records, including his name and date of birth, were properly admitted as relevant to his treatment.

Regarding Petitioner's invocation of the Confrontation Clause, Respondent asserts that the unredacted information did not violate Petitioner's right of confrontation because the information was not testimonial. (Resp. Br. at 21.) Again, the Court agrees.

"[A] statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial." *Ohio v. Clark*, 135 S. Ct. 2173, 2180 (2015). A statement is considered testimonial when "in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Id.* (alteration in original) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). The Supreme Court has "suggested, albeit in passing dictum, that the Confrontation Clause might not apply at all to 'statements to physicians in the course of receiving treatment.'" *Duhs v. Capra*, 639 F. App'x 691, 694 (2d Cir. 2016) (quoting *Giles v. California*, 554 U.S. 353, 376 (2008)). Here, the challenged information contained in the medical records was communicated by Washington to hospital personnel in the context of treating the injuries sustained in the fight with Petitioner.

The primary purpose of those conversations was clearly to assist in medical diagnosis and treatment, not to "establish[] evidence for the prosecution." *Clark*, 135 S. Ct. at 2180.

Because the challenged information in the medical records was thus admissible under state evidentiary law, and did not run afoul of the Confrontation Clause, Montanez's trial counsel was not deficient for failing to properly object to its admission. Therefore, the Appellate Division's rejection of Montanez's ineffective assistance claim on this ground was not "unreasonable." *Knowles*, 556 U.S. at 123.

### c.       Officer Delsordo's Testimony

Finally, Montanez contends that his trial counsel was constitutionally deficient for failing to object on the basis of hearsay to Officer Delsordo's testimony identifying Washington as the victim at the scene. (Petition at 43.) "Out–of–court statements offered for the truth of the matters they assert are hearsay," and can be admitted into evidence under New York law only if they qualify for an exception to the hearsay rule, and are demonstrably reliable. *Nucci ex rel. Nucci v. Proper*, 95 N.Y.2d 597, 602 (2001).

At trial, Officer Delsordo testified that Washington was the victim of the attack, which he learned from looking at the victim's driver's license. (Tr. at 162–63.) Respondent contends that the testimony was not hearsay, because the identification of Washington was not offered for the truth of matter asserted. (Resp. Br. at 21.) Again, the Court agrees. As Respondent explains, the testimony "was not offered as evidence that Kayim Washington was the victim's actual name and that he was in fact born on the listed date of birth, but rather as additional circumstantial evidence connecting the victim at the scene with the patient treated at Bellevue, whose medical records contained the same identifying information." (*Id.*) Therefore, the testimony did not constitute hearsay, any objection to its admission on that basis would have meritless, and counsel

was not deficient for failing to make the objection.  *See United States v. Kirsh*, 54 F.3d 1062,

1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of

ineffective assistance[.]").  As such, Montanez's ineffectiveness claim on this ground must also

be denied.

Overall, the Court concludes that Montanez cannot demonstrate that his trial counsel was

constitutionally ineffective.  His request for habeas relief on this ground is thus denied.

### B.    Supplemental Jury Instruction

In his second ground for relief, Montanez asserts that the trial court's supplemental

instruction during deliberations—regarding the ability to infer defendants' intent—impermissibly

failed to advise the jury that the inference was permissive and could be rejected.  (Petition at 44–

46.)  The Appellate Division concluded that this argument was unpreserved, and thus declined to

review it "in the interest of justice."  147 A.D.3d at 446.  In the alternative, the Appellate

Division held that the claim was meritless.  *Id*.  Because this claim was resolved on an

independent and adequate state ground, it is procedurally barred from federal habeas review.

As an initial matter, the Appellate Court was correct that Montanez's trial counsel did not

argue to the trial court that the supplemental instruction impermissibly created a mandatory

inference.  Defense counsel objected to the supplemental instruction on other grounds (Tr. at

1266–73, 1295–1300), but never regarding the permissiveness of the inference.  In the reply brief

before the First Department, Montanez's appellate counsel asserted briefly that "[t]he issue was

preserved," presumably because trial counsel had objected to the supplemental instruction on

other bases.  (Petition at 79.)  However, because the *specific* ground on which Montanez now

objects was not raised before the trial court, this claim was not preserved for appellate review

under New York's contemporaneous objection rule.  *See Sanchez v. Lee*, No. 10 Civ. 7719, 2011

WL 924859, at *16 (S.D.N.Y. Mar. 16, 2011), *report and recommendation adopted*, 2011 WL

3477314 (S.D.N.Y. Aug. 8, 2011) ("[I]f a party neglects to raise a claim in the trial court, or fails to specify the grounds for an objection (either because the objection is general, or because it specifies a different ground than that raised on appeal), state appellate courts generally will not consider that claim.").

"Both the Supreme Court and the Second Circuit have held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground." *Harris v. Woods*, No. 05 Civ. 5582, 2006 WL 1140888, at *36 (S.D.N.Y. May 1, 2006), *report and recommendation adopted*, 2006 WL 1975990 (S.D.N.Y. July 10, 2006). Courts in this Circuit have "deferred to New York's consistent application of its contemporaneous objection rules," and there is no allegation that the rule has been "misapplied" in this case. *Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999).

Because there is an independent and adequate determination by the Appellate Division that Montanez procedurally defaulted on this claim, it "cannot be the basis for habeas relief unless [Montanez] can show either (1) cause for his default and actual prejudice, or (2) that the Court's failure to consider his claim will result in a fundamental miscarriage of justice." *Rodriguez v. Uhler*, No. 15 Civ. 5075, 2017 WL 354180, at *7 (S.D.N.Y. Jan. 24, 2017). But Montanez fails to allege cause and actual prejudice, or that the default will result in a fundamental miscarriage of justice. And reviewing the record, the Court observes nothing that would demonstrate that an external factor prevented counsel from raising the argument, that failure to raise the objection affected the outcome of the trial, or that Petitioner is actually innocent.

Therefore, Petitioner's claim that the trial court issued a supplemental instruction impermissibly calling for a mandatory inference of intent is procedurally barred from federal habeas review.

### C.    Ability of the Evidence to Sustain the Verdict

Next, Montanez raises three related arguments regarding whether the evidence against him can to sustain the verdict reached.  (Petition at 47–51.)

#### 1.    Sufficiency of the Evidence

First, Montanez contends that the proof offered at trial was legally insufficient to support a conviction for gang assault in the second degree under New York Penal Law § 120.06. (Petition at 47.)  The Appellate Division rejected this argument on the merits, reasoning that "[t]he evidence amply established that each defendant acted with the requisite intent and community of purpose[.]"  147 A.D.3d at 444–45.  Because that conclusion was reasonable, Montanez's request for habeas relief on this basis is denied.

"[E]vidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  On habeas review, a federal court may "overturn a state court decision rejecting a sufficiency of the evidence challenge . . . only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (quoting *Cavazos*, 565 U.S. at 2).  A petitioner challenging the sufficiency of evidence under § 2254 "thus bears a 'very heavy burden.'"  *Adamson v. Griffin*, No. 16 Civ. 0511, 2016 WL 6780011, at *7 (S.D.N.Y. Nov. 16, 2016) (quoting *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002)).

"When considering the sufficiency of the evidence of a state conviction, a reviewing court must first determine the elements of the underlying crime based on state law." *Id.* A conviction for gang assault in the second degree under New York law requires proof that, "with intent to cause physical injury to another person and when aided by two or more other persons actually present, [the defendant] cause[d] serious physical injury to such person or to a third person." N.Y. Penal Law § 120.06. Even if the defendant did not personally strike the blow causing the injury, he can be liable for second degree gang assault if he acted in concert with the principal who did, which requires "acting with the [requisite] mental culpability" and "intentionally aid[ing]" the principal in commission of the assault. N.Y. Penal Law § 20.00. "Serious physical injury" is defined by the statute as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." N.Y. Penal Law § 10.00(10).

Montanez does not specifically challenge the first element—that he acted with the "intent to cause physical injury." And a jury could fairly infer such intent from the video, which shows Montanez attempting to strike Washington. (Video at 1:43–47.) Nor does Montanez specifically challenge that the temporal bone fracture and resultant permanent hearing loss sustained by Washington constitute a "serious physical injury" as defined by New York Law. N.Y. Penal Law § 10.00(10). And any such a challenge would be meritless, as the jury heard medical testimony confirming that that Washington's injuries put him at risk of death and caused permanent hearing loss. (Tr. at 415–21.)

Montanez argues, however, that the evidence is insufficient to establish the third element—that he caused or was acting in concert with someone who caused serious physical

injury. At trial, a medical witness testified that Washington's temporal bone fracture and hearing loss were most likely caused by being struck with an instrument, such as the wooden plank or traffic cone, and not my merely by being punched or stomped. (Tr. at 415–18.) Relying on that testimony, Montanez argues that he was not acting in concert with the individuals who used instruments to strike Washington, and that he had withdrawn from the fight by the time instruments were introduced. (Petition at 51.) Respondent counters that there is enough evidence in the video for a jury to infer that Montanez shared a community of purpose with the other assailants in attacking Washington. (Resp. Br. at 31–32.) More specifically, Respondent contends that a jury could infer that Montanez did not withdraw from the fight when it entered the street, but rather continued to act in concert with the other assailants after instruments were used to strike Washington. (Resp. Br. at 32–33.)

The Court agrees with Respondent. The video shows Montanez punching Washington while the victim was restrained by Defendant Terrell. (Video at 1:03–1:05; Tr. at 987.) Montanez and the other defendants proceeded to simultaneously attack a different man who tried to intervene in the fight. (Video at 1:10–1:19; Tr. at 987.) Montanez then tried to kick and stomp Washington while Defendant Terrell tried to strike him with the traffic cone. (Video at 1:43–47.) And Montanez continued standing alongside the group of assailants as the beating continued in the street before finally gesturing to the group to disperse. (Video at 1:56–2:07.) In viewing the evidence in the light most favorable to the prosecution, as this Court is required to do, the jury could have found beyond a reasonable doubt that Montanez was acting in concert with others who caused serious physical injury to Washington. *See Cavazos*, 565 U.S. at 7. Therefore, the Appellate Division was not "objectively unreasonable" in rejecting Montanez's sufficiency challenge. *Coleman*, 566 U.S. at 651.

### 2.      Weight of the Evidence and Repugnancy of the Verdict

Montanez also contends that the verdict was repugnant and unsupported by the weight of the evidence.  (Petition 47–51.)  However, review under 28 U.S.C. § 2254 is limited to alleged violations of *federal* law; claims which are based solely on *state* law are not cognizable on federal habeas review.  *See Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006).  Repugnancy and weight-of-the-evidence challenges are two such claims.  *See Jones v. Racette*, No. 15 Civ. 7297, 2016 WL 7189851, at *4 (S.D.N.Y. Dec. 12, 2016) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus."  (quoting *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011))); *Estrada v. Senkowski*, No. 98 Civ. 7796, 1999 WL 1051107, at *14 (S.D.N.Y. Nov. 19, 1999) ("[A] repugnant verdict argument is . . . not cognizable on federal habeas review.").

Montanez's claims for habeas relief premised on the ability of the evidence to support his convictions are thus denied.

### D.      Motions for Mistrial

Montanez also seeks habeas relief based on the alleged errors of the trial court in denying his motions for a mistrial on three occasions:  (1) after the late disclosure of medical records; (2) upon the allegedly inflammatory summation from co-defendant's counsel; and (3) in light of allegedly prejudicial publicity during jury deliberations.  (Petition at 52–58.)  To the extent Petitioner's claim is premised on the first mistrial motion, the Court will not consider it because it was not presented as a federal constitutional violation to the state courts.  As for the due process claims premised on the second and third mistrial requests, the Court rejects them on the merits.

### 1. Exhaustion and Procedural Default

Respondent contends that in challenging the erroneous denial of two of his mistrial motions in state court—regarding the late disclosure of records and summation of co-defendant's counsel—Montanez did not specifically invoke any federal constitutional rights. Therefore, according to Respondent, these aspects of the claims are unexhausted and procedurally defaulted. (Resp. Br. at 36 n.8, 39 n.11.)

"In order to satisfy the exhaustion requirement of federal habeas, a petitioner must have 'fairly presented' the federal constitutional nature of a claim to the state courts." *Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992) (quoting *Gonzalez v. Sullivan*, 934 F.2d 419, 422 (2d Cir. 1991)).

> A petitioner may satisfy the fair presentation requirement by: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."

*Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (*en banc*)).

The Court agrees with Respondent that Montanez's objection to the late disclosure of Washington's medical records under federal law was not properly exhausted on direct appeal. Montanez argued on direct appeal that the trial court erred in denying the motion for an adjournment or mistral on this basis under state discovery rules. (Petition at 52, 55.) This section of Montanez's appellate brief cited only provisions of state law and state cases that did not engage in constitutional analysis. And the fact pattern—violation of state disclosure rules— is not within the mainstream of constitutional litigation, and does not call to mind a particular federal constitutional right.

Moreover, because New York law required Petitioner to bring any federal constitutional challenge to this mistrial denial on direct appeal and there is no longer a means of pursuing the argument in state court, this claim has been procedurally defaulted. *See Jones v. Keane*, 329 F.3d 290, 296 (2d Cir. 2003); *Williams*, 2017 WL 4685273, at *9. And given that Montanez has not attempted to overcome the procedural default by demonstrating cause and prejudice or actual innocence, the Court does not reach the merits of this claim. *Jones*, 329 F.3d at 296.

However, the Court concludes that the federal nature of Montanez's objections to the denial of his other two mistrial motions was fairly presented to the state courts. In challenging the denial of a mistrial for prejudicial publicity, his appellate brief cited the federal Constitution, expressly noted that "[u]nder both the Federal and State Constitutions, a defendant has a due process right to a fair trial," and argued that denying the motion violated his right to a fair trial. (Petition at 55.) And in the subsequent section, the brief argued that denying the mistrial motion based on co-counsel's prejudicial summation again deprived Montanez of a fair trial. (Petition at 57–58.) The Appellate Division recognized the similarity between the challenges to the publicity and summation rulings by addressing the merits of the two arguments together. 147 A.D.3d at 445.

Therefore, although the subsection of Petitioner's brief regarding the summation-mistrial motion did not expressly cite the federal Constitution or federal cases, in the context of the brief as a whole and given the nature of the fact pattern involved, the Court concludes that Montanez's arguments nonetheless put the state court on notice of the federal nature of the claim. As such, the Court will proceed to address the merits of Montanez's claims regarding the denials of his other two mistrial motions.

## 2. Merits

"There is a . . . high bar to relief when a habeas petitioner is challenging the denial of a motion for mistrial. On habeas review, the petitioner must show that the denial of a motion for a mistrial 'deprive[d] him of a fundamentally fair trial.'" *Williams v. Lee*, No. 14 Civ. 2981, 2017 WL 4685273, at *14 (S.D.N.Y. Aug. 8, 2017), *report and recommendation adopted*, 2017 WL 4685105 (S.D.N.Y. Oct. 17, 2017) (quoting *Nowlin v. Greene*, 467 F. Supp. 2d 375, 381 (S.D.N.Y. 2006)); *see also Toland v. Walsh*, No. 04 Civ. 0773, 2008 WL 65583, at *20 (N.D.N.Y. Jan. 4, 2008). Montanez does not satisfy that high bar here.

### a. Co-Counsel's Summation

Montanez contends that the summation of McCray's trial counsel—and the trial court's failure to grant a mistrial thereafter—violated his right to a fair trial, because it "directly clashed" with Montanez's theory of the case and included "highly inflammatory" comments. (Petition at 58.) The Appellate Division rejected this challenge on the merits, reasoning that the trial court "gave a curative instruction that appropriately addressed any alleged danger of prejudice from the other lawyer's remarks." 147 A.D.3d at 445. Because this conclusion is not inconsistent with clearly established Supreme Court law, the request for habeas relief on this basis is denied.

Overall, the theories of the case presented by McCray and Montanez were consistent: that the defendants' actions were justified, that the defendants' were not acting in concert, and that the unidentified plank-wielding man with whom the friends were not associated caused Washington's serious injury. (Tr. at 793–94, 820, 838, 840, 944, 950, 963.) Montanez is correct that some of the statements of McCray's counsel—implying that the friends came to McCray's aid in the fight (Tr. at 815)—could be interpreted as inconsistent with Montanez's theory, under which Montanez was not acting in concert with his friends or anyone else (Tr. at 958). But after Montanez's counsel expressed concern about the inconsistent theories (Tr. at 832–33), McCray's

counsel clarified in the final portion of his summation that the defendants were not acting in concert with one another (Tr. at 838, 840).  Given this clarification, and given that McCray's counsel only mentioned Montanez by name once in passing during his summation (Tr. at 780), the Appellate Division could have reasonably concluded that any potential inconsistencies between created  by the summation of McCray's counsel were not prejudicial.

Furthermore, any inconsistency, and any potential prejudice from certain other statements, were remedied by the trial court's curative instructions.  The trial court thoroughly instructed the jury on at least two occasions that the arguments of the lawyers are not evidence. (Tr. at 761, 816.)  And during the objected-to summation, the court instructed the jury to view each defendant individually and to evaluate the evidence against them separately.  (Tr. at 833–34.)  The court also issued a specific curative instruction to address the objected-to statement that all defendants lie.  (Tr. at 834.)  Given the "crucial assumption underlying the jury system . . . that juries will follow the instructions given them by the trial judge," the Appellate Division could have reasonably concluded that the trial court's thorough curative instructions maintained Petitioner's ability to receive a fair trial notwithstanding co-counsel's remarks.  *Nowlin*, 467 F. Supp. 2d at 380–81 (brackets omitted) (quoting *Parker v. Randolph*, 442 U.S. 62, 73 (1979)).

Finally, to the extent any objected-to remarks were not specifically addressed by a curative instruction, they were insufficiently prejudicial to require a mistrial.  The statements by McCray's counsel's that the attack was "vicious," and that "90 percent" of black men "are hard working, decent, honest people," were part of his trial strategy and are not unfairly inflammatory when assessed in the proper context.  (*See* Tr. at 849; Resp. Br. at 43.)  And the statements about aliens and "Inspector Clousteau [*sic*]," and suggestions that the jury does not "know anything

about detective work," though odd, could not be reasonably expected to prejudice the jury against Petitioner.

Viewing the summation of McCray's counsel as a whole, in light of the curative instructions issued by the trial court, the Court cannot disturb the conclusions of the state trial and appellate courts that the summation did not deprive Montanez of a fundamentally fair trial. After the summation, the trial court thoughtfully considered counsels' objections and was receptive to any requests for further curative instructions.  Ultimately, the trial court concluded that given the detailed jury instructions it would issue and the remaining three summations, any prejudice would be dissipated and a mistrial was not warranted.  (Tr. at 848–49.)  And the Appellate Division went on to affirm the trial court's conclusion on the merits.  147 A.D.3d at 445.  Because the Petitioner has not identified a sufficient basis for overturning these conclusions on federal habeas review, his request for relief on this ground is denied.

### b.  Publicity During Jury Deliberations

Montanez also challenges the trial court's failure to grant his motion for a mistrial during jury deliberations after news coverage of the case surfaced.  Specifically, Montanez asserts that the publicity surrounding the case was prejudicial, and the trial court failed to engage in the proper inquiry to determine whether the jury could remain impartial.  (Petition at 55–57.)  The Appellate Division rejected this challenge on the merits as well, reasoning that the trial court "engaged in an appropriate inquiry of the jurors, which elicited that they had not been exposed to the coverage at issue." 147 A.D.3d at 445.

"[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation."  *Smith v. Phillips*, 455 U.S. 209, 217 (1982).  Rather, it requires "a jury capable and willing to decide the case solely on the evidence before it, and a trial

judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.* "[A] trial court retains 'broad discretion' in taking action to fulfill its duty to ensure juror impartiality," *Romance v. Bradt*, 391 F. App'x 89, 91 (2d Cir. 2010), so long as it is "respectful of the 'ultimate inquiry' when examining an intrusion, media or otherwise upon a jury's deliberations: 'Did the intrusion affect the jury's deliberations and thereby its verdict?'" *Vellon v. David*, No. 01 Civ. 6505, 2003 WL 23185761, at *10 (E.D.N.Y. Nov. 11, 2003) (quoting *United States v. Olano*, 507 U.S. 725, 739 (1993)).

"A trial judge's determination of juror impartiality is entitled to a presumption of correctness, and a habeas court may overturn such a determination only for 'manifest error.'" *Sullivan v. William Lee*, No. 10 Civ. 425, 2017 WL 3634598, at *9 (E.D.N.Y. Aug. 22, 2017) (quoting *Patton v. Yount*, 467 U.S. 1025, 1031 (1984)). The touchstone for courts deciding such issues on federal habeas review is "whether there is fair support in the record for the state court's conclusion that the jurors in a trial would be impartial." *Id.* (brackets omitted) (quoting *Patton*, 467 U.S. at 1038).

There is ample "support in the record" for the conclusion that the jurors could remain impartial in this case. The trial court repeatedly told the jurors throughout trial not to research the case and to avoid any media coverage of it. (Tr. 10, 83, 169, 234–35, 902, 1262–63.) "In the absence of evidence to the contrary, [courts] presume the jury followed these admonitions and avoided exposure to news reports about the trial." *United States v. Casamento*, 887 F.2d 1141, 1154 (2d Cir. 1989). Montanez does not point to any evidence to the contrary; rather, when questioned during trial, the jurors indicated that they had followed the court's instructions. After the first news article about the case appeared midway through the jury's deliberations, the court questioned each juror individually, asking whether they had "seen anything on television or

in the media, in the news" that "might affect [their] view about the case or affect [their] ability to be fair and impartial."  (Tr. at 1221–22, 1224.)  Each juror responded that they had not seen any news coverage, and the court reminded them to continue avoiding any coverage of the case.  (Tr. at 1224–45.)  By the next day of deliberations, two additional articles had been published about the case, in addition to a television news report.  The court proceeded to ask the jurors as a group whether anyone had "encountered any information or come across anything" that would "affect [their] ability to decide this case based upon the evidence or lack of evidence presented."  (Tr. at 1332.)  None of the jurors raised their hands to indicate that they had.  (Tr. at 1333.)

Based on these facts, the trial court reasonably concluded that the news coverage of the case would not "affect the jury's deliberations and thereby its verdict."  *Vellon*, 2003 WL 23185761, at *10.  Petitioner has not overcome the presumptive correctness of this conclusion by demonstrating "manifest error."  *Sullivan*, 2017 WL 3634598, at *9.  As such, the denial of Petitioner's motion for a mistrial on the basis of prejudicial publicity did not violate his due process rights, and the request for habeas relief on this basis is denied.

### E. Missing Witness Charge

Finally, Montanez argues that the trial court's denial of his request for a missing witness charge for Washington violated "his due process right to a fair trial" under the Constitution.  (Petition at 62–63.)  The Appellate Division denied this claim on the merits, concluding that Montanez was not entitled to a missing witness charge under state law.  147 A.D.3d at 445–46.  Because the Court agrees with that conclusion, Montanez's request for habeas relief on this basis must also be denied.

"Under New York law, to warrant a missing witness charge, the moving party must show that: (1) the witness is knowledgeable about a material issue in the case; (2) the witness would be expected to give noncumulative testimony favorable to the party who has not called him; and (3)

the witness is in the 'control' of, or available to, the party." *Adamson*, 2016 WL 6780011, at *6.

"[T]he decision of whether to give a missing witness charge is committed to the sound discretion of the trial court." *Id.*

In order to prevail on a habeas claim premised on the failure to issue a missing witness charge, a court must answer three questions in the petitioner's favor: "First, was he entitled to a [missing witness] charge? Second, if so, did the failure to give one result in a denial of due process? Third, if so, did the state court's contrary conclusion constitute an unreasonable application of clear Supreme Court law?" *Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir. 2005). Given the difficulty of satisfying all three inquiries, "decisions in this area will rarely support reversal or habeas relief." *Adamson*, 2016 WL 6780011, at *6 (quoting *Malik v. Kelly*, No. 97 Civ. 4543, 1999 WL 390604, at *7 (E.D.N.Y. Apr. 6, 1999)).

The trial court concluded that such a charge was not warranted here because Washington was not "in the 'control' of, or available to, the" prosecution. *Id.* The court documented the State's efforts to secure Washington's presence at trial (Tr. at 686–89), and found that because the prosecution made a "diligent effort" but was unable to locate him for trial, Washington was not available (Tr. at 685, 688, 702). On habeas review, the trial court's findings on this issue "shall be presumed to be correct" unless rebutted "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Montanez asserts that the efforts were insufficiently diligent, positing other steps the prosecution could have taken to locate the witness. (Petition at 61–62.) But these unproven suggestions are insufficient to rebut the finding that Washington was unavailable to the prosecution. That the prosecution could have done more to locate Washington does not negate the conclusion that its efforts were "reasonable but unsuccessful" and that it "demonstrat[ed] a

'genuine inability to locate the witness.'" *Montanez*, 147 A.D.3d at 446 (quoting *Savinon*, 100

N.Y.2d at 198.) Montanez has thus failed to establish that the trial court abused its discretion in

declining to give a missing witness instruction. Furthermore, given that Montanez's trial counsel

argued about the significance of Washington's absence at length in his summation (Tr. at 932–

34, 943–48), any prejudice from the denial of the charge was substantially abated. *See Adamson*,

2016 WL 6780011, at *6 ("Reversal is particularly inappropriate where, as here, defense counsel

urged an adverse inference in his summation.").

Because the lack of a missing witness charge here was not erroneous and did not deprive

Montanez of due process, habeas relief is not warranted on this ground.

## IV.    Conclusion

For the foregoing reasons, Montanez's petition for a writ of habeas corpus is DENIED.

The Court declines to issue a certificate of appealability because the petitioner has not "made a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Court

further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the

merits would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445

(1962).

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: November 30, 2018
       New York, New York

_____
               J. PAUL OETKEN
            United States District Judge


*COPY MAILED TO PRO SE PARTY BY CHAMBERS*